In re the PATERNITY OF M.R., Mauri Goens, Appellant–Respondent,

v.

Jalen ROSE, Appellee–Petitioner.

No. 29A05–0207–JV–316.

Court of Appeals of Indiana.

March 7, 2003.

---

Lilaberdia Batties, Sheryl L.Lynch, Indianapolis, IN, for Appellant.

Karl L. Mulvaney, James A. Reed, Nana Quay–Smith, Denise W. Chavis, Bingham McHale, Indianapolis, IN., for Appellee.

## OPINION ON REHEARING

BAILEY, Judge.

We grant rehearing in this case solely to clarify our opinion in light of the arguments made by appellant Jalen Rose (Father) in support of his Petition for Rehearing. In all other respects, we reaffirm our original opinion.

### I.

In our opinion, *In Re Paternity of M. R.*, 778 N.E.2d 861 (Ind.Ct.App.2002), we held, among other things, that the Indiana trial court in which Father filed his Verified Petition to Establish Paternity lacked jurisdiction over Father's petition pursuant to the Uniform Interstate Family Support Act (UIFSA), which provides in part as follows:

An Indiana tribunal may not exercise jurisdiction to establish a support order if the petition is filed before a petition or comparable pleading is filed in another state if:

(1) the petition or comparable pleading in the other state is filed before the expiration of the time allowed in Indiana for filing a responsive pleading challenging the exercise of jurisdiction by Indiana;

(2) the contesting party timely challenges the exercise of jurisdiction in Indiana; and

(3) the other state is the home state of the child, if relevant.

IND.CODE § 31–18–2–4(b). As noted in our opinion, Mauri M. Goens ("Mother") filed her Complaint to Establish Paternity in Georgia after Father filed his paternity petition in Indiana, but within the time permitted to file a responsive pleading challenging the Indiana trial court's jurisdiction. Mother asserted a timely jurisdictional challenge in the Indiana proceeding. We concluded that the evidence established that Georgia was M.R.'s home state, and that Indiana therefore lacked jurisdiction over Father's petition pursuant to the UIFSA.

█ In his rehearing petition, Father argues that our conclusion regarding M.R.'s home state was erroneous. In particular, Father contends that this conclusion was based solely on Father's testimony that Mother and M.R. moved from Indiana to Georgia the first week of October, 2001. Father further argues that a party's "move" to a state does not itself establish that the state to which the person moves is the person's "home state" under the UIFSA. We agree. As we explained in our opinion, a child's "home state" under the UIFSA is "the state in which a child lived with a parent ... for at least six (6) consecutive months immedi-ately preceding the time of filing of a petition comparable pleading for sup-port. . . ." IND.CODE § 31–18–1–5.

We noted in our opinion that the evidence presented at the hearing established that Mother and M.R. moved to Georgia more than six months prior to the filing of Father's petition, and that Georgia was therefore M.R.'s "home state." Our statement regarding the move was not intended to refer simply to the act of moving, but was intended to convey the generally un-derstood meaning of the phrase "to move" when used in the context of residential relocation—that is, we meant that Mother transferred her and M.R.'s residence to Georgia more than six months prior to the filing of Father's petition.

This fact, and the corollary facts that Mother and M.R. resided in Georgia for at least six consecutive months before Father filed his petition, was established by the evidence. Again, Father testified that Mother and M.R. moved from Indiana to Georgia not later than the first week of October 2001. He further testified that the parties discussed the prospect of Mother returning to Indiana at some point after the move, but decided that a return prior to May 2002 (after the petition was filed) would be impossible because Moth-er's son (who is not part of this case) was in school in Georgia. Moreover, Father testified that at the time of the hearing, Mother continued to reside in Georgia with M.R. in a home Father maintained. Fa-ther correctly notes that Mother had the burden of proof on the issue. Father's own testimony, however, which was uncon-tradicted, satisfied that burden, and sup-ported only the inference that M.R. resid-ed in Georgia for six months before Father filed his petition.

## II.

█ Father also argues that he should be entitled to challenge the Georgia trial

court's power to exercise personal jurisdiction over him, and contends that our opinion somehow "eviscerated" his right to assert a personal jurisdiction defense, and turned this defense "on its head" by forcing him to submit to the jurisdiction of the Georgia trial court. (Petition for Rehearing, p. 9.) We frankly do not understand Father's argument. What we said in our opinion was that if Father is not subject to jurisdiction in Georgia, that is Mother's problem. In other words, Father may challenge the Georgia court's jurisdiction, as it is his right to do, and if he is successful, it will be Mother who will be without recourse, at least in that state. In response to Father's expressions of concerns about Mother's ability to secure a support order in Georgia for M.R., we suggested that Father could always choose to submit to the jurisdiction of the Georgia trial court, just as Mother could submit to jurisdiction in this state. Our statement in no way constituted, and could not possibly be regarded as, a command to Father to submit to the jurisdiction of the Georgia trial court.

SULLIVAN and MATHIAS, JJ., concur.